UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEW MEXICO

In re:  THOMAS FRANCES YOUNG and,                                           No. 11-12554-j7
        CONSUELO ANGELINA YOUNG,

        Debtors.

MEMORANDUM OPINION

THIS MATTER is before the Court on the First and Final Application by Attorneys for Debtors-in-Possession For Allowance and Payment of Compensation as a Chapter 11 Administrative Expense for the Period of June 30, 2011 Through June 6, 2012 ("Fee Application") filed by William F. Davis & Associates, P.C. ("Attorneys") as counsel for Thomas Frances Young and Consuelo Angelina Young ("Debtors" or "Mr. and Mrs. Young").[1] *See* Docket No. 179.  Creditor Bank'34 filed an Objection to the Fee Application ("Objection") (Docket No. 185) along with a supplement identifying the specific time entries to which it objects ("Supplemental List of Objections") (Docket No. 7) by and through its attorneys of record, Martin, Lutz, Roggow, & Eubanks, P.C. (James Roggow).  The Court held a final evidentiary hearing on the Fee Application on October 22, 2012 and took the matter under advisement.

Attorneys seek allowance as an administrative expense the sum of $53,930.28, consisting of post-petition professional services in the amount of $49,573.00, costs and expenses in the amount of $887.01, and applicable gross receipts taxes in the amount of $3,470.27.  *See* Exhibit

---

[1] Attorneys withdrew as counsel for Mr. and Mrs. Young on September 10, 2012.  *See* Order Granting William F. Davis & Assoc., P.C.'s Motion to Withdraw as Counsel For Debtors (Docket No. 198).

1 to Fee Application, p. 2.  Bank'34 asks the Court to deny the Fee Application in its entirety on the grounds that: (1) Attorneys failed to file a fee application at least every 180 days as required by the Order on Debtors' Motion to Employ Attorneys William F. Davis & Assoc., P.C. ("Employment Order") (Docket No. 83); and (2) Attorneys failed to adequately disclose the source of compensation as required by Fed.R.Bankr.P. 2016(a).  Alternatively, Bank '34 challenges the reasonableness of the requested fees on the grounds that the fees were not reasonably likely to benefit the Debtors' estate.

After considering the Fee Application, the evidence, and arguments of counsel, and being otherwise sufficiently informed, the Court finds that Attorneys' failure to file a fee application within 180 days and disclose the source of compensation does not bar them from receiving compensation.  However, the Court finds, for the reasons set forth below, that a portion of the fees and costs charged must be disallowed.

## FINDINGS OF FACT

The Debtors filed a voluntary petition, pro se, under Chapter 11 of the Bankruptcy Code on May 31, 2011.  *See* Docket No. 1.  Although the Debtors were not represented by counsel at that time, their son, Kurt Young ("Kurt"), assisted the Debtors with the compilation of their financial information and filing of the petition.  On July 5, 2011, the Debtors filed an application seeking to employ Attorneys as their counsel.  *See* Docket No. 40.  The Court entered an order authorizing the employment of Attorneys on August 3, 2011.  *See* Employment Order (Docket No. 83).  Paragraph E of the Employment Order provides: "[a]ttorneys will file fee applications at least every 180 days."  *Id.*  Pursuant to the Employment Order, Attorneys were required to file a first fee application no later than January 1, 2012.  Attorneys filed the Fee Application on July 27, 2012, nearly six months after the deadline contained in the Employment Order.

Between July 5, 2011 and September 10, 2012, Attorneys billed 296.20 hours in connection with their work on the Debtors' bankruptcy case. *See* Exhibit A to the Fee Application, p. 3 (Docket No. 179-1). Attorneys' billing statements reflect total fees and costs incurred in the amount of $53,930.28, $22,431.30 of which remains unpaid. *Id.* at p.2. Andrea Steiling, at an hourly rate of $175.00, handled most of the attorney work for the Debtors in connection with this case. She billed 207.80 of the total hours of attorney time. *Id.* at p. 3. Ms. Steiling started working at the Davis Firm in May of 2009. She began by doing initial client consultations, progressed to handling Chapter 7 cases, then Chapter 13 cases, and now she has been assisting with work on some Chapter 11 cases. Since 2009, she performed services in a total of five Chapter 11 cases. She has also filed approximately thirty Chapter 13 cases for which she testified she is responsible for the majority of the work.

The Schedules filed of record in the Debtors' bankruptcy case reflect assets valued at $5,824,750.00, secured claims of about $4,529.055.04, and non-priority unsecured claims totaling $142,954.96. Schedule A lists several properties including the Debtors' residence, a fitness center, two rental homes, a condo, a piece a vacant land, and four business buildings. Schedule B lists personal property valued at $44,750.00. Schedule D lists ten (10) secured creditors consisting of creditors holding first and/or second mortgages against the Debtors' residence and various real estate holdings. Schedule F lists nine non-priority unsecured claims totaling $142,954.96. Schedule G lists one executory rental agreement, one vehicle lease, and one cell phone contract. Schedule H does not list any co-debtors. Schedules I and J reflect monthly income after payroll deductions of $5,765.00 and monthly expenses of $8,933.00.

Debtors also own 100% of a New Mexico Limited Liability Company, Laguna, L.L.C. (New Mexico Public Regulation Commission Filing No. 2914505). Laguna, L.L.C. operates a

fitness center. The Debtors lease land and buildings to Laguna, L.L.C. Bank'34 has a lien against rents. Laguna, L.L.C. paid no rent to the Debtors during the pendency of the Chapter 11 case. Laguna, L.L.C. paid $15,283.19 of the Debtors' legal fees to Attorneys. Attorneys did not disclose that a third party had paid a portion of their legal fees, as required by Fed.R.Bankr.P. 2016(a). Ms. Steiling testified that she was unaware that Laguna, L.L.C. was paying a portion of the Debtors' legal fees. The checks were received and processed by Attorneys' accounting manager. Attorneys do not have a procedure in place to review incoming checks individually and make a record of payments made by someone other than the Debtor for use in connection with fee applications.

Ms. Steiling testified that several complications arose during the course of representing Mr. and Mrs. Young in connection with their bankruptcy case. First, Attorneys were required to file extensive amendments to the Debtors' schedules and financial statements because Debtors initially filed their bankruptcy petition pro se. Next, the Debtors, through counsel, made an unsuccessful attempt to remove a civil action styled *Thomas Young v. Water Mill Properties, Inc. and Cohiba Club, LLC*, Case No. D-101-CV-2009-03622 (the "Water Mill Litigation"), filed in the First Judicial District Court for the State of New Mexico, County of Santa Fe (the "State Court"). The Debtors withdrew their notice of removal roughly two months after filing it. Ms. Steiling testified that after reviewing the pleadings filed in State Court, Attorneys realized that the costs associated with removal outweighed the benefits.

Another hurdle to achieving a successful reorganization was the Debtors' complicated relationship with their son Kurt. Kurt helped the Debtors manage their assets and finances. He gave the Debtors advice about how to handle certain properties in the context of the bankruptcy, which often conflicted with Attorneys' advice. On more than one occasion, Ms. Steiling

conferred with Kurt so that all the parties were in accord as to how to proceed with the bankruptcy case. Kurt has an investment interest in several of the Debtors' properties, and Kurt encouraged his parents to reject any proposed plan that would dispose of those properties.

Attorneys began drafting a plan and disclosure statement in April of 2012; however, the Debtors ultimately elected to convert from a Chapter 11 case to a Chapter 7 case on June 6, 2012 rather than to seek confirmation of a plan. *See* Order Granting the Debtors' Motion Pursuant to 11 U.S.C. § 1112(a) to Convert This Case From A Chapter 11 Case to a Chapter 7 Case (Docket No. 169). On September 10, 2012, Attorneys withdrew as counsel for Mr. and Mrs. Young. *See* Order Granting William F. Davis & Assoc., P.C.'s Motion to Withdraw as Counsel For Debtors (Docket No. 198).

## DISCUSSION

*1. The Employment Order Does Not Contain a Bar Date for Filing a Fee Application*

The Employment Order requires Attorneys to file a fee application at least every 180 days (hereinafter the "180-Day Provision"). *See* Employment Order, ¶ E. Because the Employment Order became effective as of July 5, 2011, Attorneys should have filed a fee application on or before January 1, 2012. Bank'34 asserts that: (1) the 180-Day Provision established a bar date precluding an award of compensation on fee applications filed after the deadline; and (2) to extend the 180-day period for filing fee applications, Attorneys must establish excusable neglect pursuant to Fed.R.Bankr.P. 9006(b). The Court disagrees.

Rule 9006(b)(1), Fed.R.Bankr.P., allows the Court, in its discretion and for cause shown, to enlarge the time for taking certain actions "on motion made after the expiration of the specified period … where the failure to act was the result of excusable neglect." Fed. R.

Bankr.P. 9006(b)(1).[2]  As Bank'34 correctly points out, a number of courts apply the excusable neglect standard in determining whether to grant an untimely fee application.  *See, e.g., West Delta Oil Co. v. Hof*, 2002 WL 506814, * 4 (E.D.La. March 28, 2002) (concluding that the bankruptcy court abused its discretion in granting untimely fee applications after it failed to apply the appropriate standard for excusable neglect).[3]  However, in those cases, the deadline for filing the fee application was explicitly characterized as a bar date.  In *West Delta Oil Co.,* for example, the debtor's counsel were required to show excusable neglect after they failed to file a fee application prior to the bar date contained in a court order.  2002 WL 506814, *3.  In other cases, the debtor's plan of reorganization included a bar date for filing administrative claims and fee applications.  *See, e.g., Matter of Valley Forge Plaza Associates*, 1992 WL 141935, * 1; *In re Gottschalk,* 1996 WL 83877, *2 (9th Cir. Feb. 27, 1996) (affirming bankruptcy court's decision to deny a fee application filed after the bar date established by the plan of reorganization).

The Court is not required to deny the Fee Application in the present case.  The Employment Order does not contain a bar date for filing a fee application.  For a particular deadline to constitute a bar date, all interested parties must be given fair notice that no claims will be allowed if filed after the specified date.  The Employment Order did not explain the consequences of failing to file a fee application within 180 days, nor did it characterize the 180-Day Provision as a bar date.  Further, the Court is aware of the long standing practice in this

---

[2] In *Pioneer Investment Services Co. v. Brunswick Associates Limited Partnership*, 507 U.S. 380, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993), the Supreme Court addressed the meaning of "excusable neglect" in the context of Fed.R.Bank.R. 9006(b)(1).  Factors to consider in determining whether a party's neglect is excusable include: "[1]the danger of prejudice to the [nonmoving party], [2] the length of the delay and its potential impact on judicial proceedings, [3] the reason for the delay, including whether it was within the reasonable control of the movant, and [4] whether the movant acted in good faith."  *Biodiversity Conversation Alliance v. Bureau of Land Management*, 2011 WL 3734199 (10th Cir. Aug. 25, 2011) (internal quotations omitted).

[3] *See also Matter of Valley Forge Plana Associates*, 1992 WL 141935, *2 (E.D.Pa. June 16, 1992) (affirming the bankruptcy court's decision to deny a fee application because counsel did not demonstrate that the failure to file a timely fee application was the result of excusable neglect); *In re Anderson,* 253 B.R. 14, 18 (Bankr.E.D.Mich.2000) (denying untimely fee application where counsel failed to establish excusable neglect).

jurisdiction that the bankruptcy judges have not enforced the 180-Day Provisions in employment orders as a bar date. For these reasons, the Court finds that Attorneys did not have fair notice that the 180-Day Provision was a bar date. Accordingly, the Court will not treat it as such.

Although the 180-Day Provision is not a bar date, the Court nonetheless finds that Attorneys failed to comply with the deadline imposed by the Employment Order. The Court has the inherent authority to enforce its orders and impose appropriate sanctions. *U.S. v. Ballard*, 2011 WL 989851, *3 (10th Cir. March 22, 2011) (citing *Van Sickle v. Holloway*, 791 F.2d 1431, 1437 (10th Cir.1986)). *See also Jordan F. Miller Corp. v. Mid-Continent Aircraft Service*, *Inc.,* 1998 WL 68879, *3 (10th Cir. Feb. 20, 1998) (internal citations omitted) (Federal Courts have discretion "to fashion an appropriate sanction"). Attorneys filed their Fee Application roughly six months after the deadline provided for in the Employment Order. In this jurisdiction, unlike in certain other jurisdictions, bankruptcy professionals are typically paid interim compensation prior to the Court's approval of the professional's compensation.[4] The purpose of the 180-Day Provision is to limit the amount of interim compensation that can be paid prior to Court approval of fees. If an attorney fails to file timely fee applications, the Court's ability to monitor the reasonableness of the attorney compensation is impaired. An attorney could then receive interim compensation in excess of the amount the Court ultimately approved and be subject to disgorgement.

Based on the Court's inherent authority to enforce its own orders, the Court can permit Attorneys to proceed to seek compensation without extending the time for filing the Fee Application as required under the terms of the Employment Order. Consequently, the Court

---

[4] The Court's Sample Employment Order, for example, provides that the debtor is authorized to pay the professional 75% of billed fees, 100% of reimbursable costs, and 100% of applicable gross receipts tax on a monthly basis before the a final fee application is approved. *See Sample Order Approving Debtor's Employment of Professional,* United States Bankruptcy Court, District of New Mexico General Chambers' Procedures Page, available at http://www.nmb.uscourts.gov/generalchambers.

-7-

declines to apply the excusable neglect standards set forth in *Pioneer* to Attorneys' request for an extension of time. Instead, the Court will grant the Attorneys relief from the requirement to file a fee application at least every 180 days as set forth in the Employment Order, but will impose a sanction on Attorneys for violating one of its terms. Having considered all the facts and circumstances known to the Court, the Court finds it appropriate to reduce the amount of allowed compensation by $1,500 as a sanction for Attorneys' failure to comply with this provision of the Employment Order.

*2. Whether the Court Should Deny the Fee Application Under Rule 2016.*

Bank'34 also contends that the Fee Application should be denied under Fed.R.Bankr.P. 2016(a) because Attorneys failed to adequately disclose the source of compensation paid to them. The Fee Application lists Mr. and Mrs. Young as the source of compensation when, in fact, Laguna, LLC paid roughly $15,283.19 of the total amount paid. This is approximately 49% of the amount Attorneys have been paid for representing the Debtors in this bankruptcy case. Approximately 42% of the total amount billed remains unpaid.

Rule 2016(a). Fed.R.Bankr.P., provides that, in applying for compensation for services or reimbursement for expenses under 11 U.S.C. § 330, a professional shall "file an application setting forth a detailed statement of: (1) the services rendered, time expended and expenses incurred; and (2) the amounts requested." Fed.R.Bankr.P.2016(a). The application must include: (a) a statement of what payments have been made or promised to the applicant for services rendered or to be rendered; (b) the source of the compensation; and (c) the details of any arrangement to share the compensation. *Id.* A court confronted with an attorney's violation of the Bankruptcy Code and/or Rules is afforded a "great deal of latitude in fashioning an appropriate sanction." *Mapother & Mapother, P.S.C. v. Cooper (In re Downs)*, 103 F.3d 472,

478 (6th Cir.1996)); *In re Parklex Associates, Inc.*, 435 B.R. 195, 207 (Bkrtcy.S.D.N.Y. 2010) (same). The Tenth Circuit Bankruptcy Appellate Panel has held that that the failure of a Chapter 11 debtor's attorney to disclose a prepetition retainer pursuant to Rule 2016(b) was an adequate basis to deny all compensation. *In re Smitty's Truck Stop, Inc.,* 210 B.R. 844, 849 (10th Cir. BAP 1997).

Here, Ms. Steiling testified that Attorneys did not properly disclose the source of compensation because Attorneys did not have a procedure in place to track sources of payment of compensation.[5] Attorneys were therefore unaware that Laguna L.L.C. had paid a substantial portion of the amounts paid to Attorneys. Attorneys represented to the Court that they will promptly implement appropriate procedures to avoid this problem. This is the first violation of Rule 2016(a) by Attorneys brought to the Court's attention. While Attorneys' violation of Rule 2016(a) would have been avoided had it exercised proper oversight, the Court concludes that denying the Fee Application in its entirety is not appropriate under the circumstances. As a sanction for failing to comply with Rule 2016(a), the Court will require Attorneys to return $6,113.28 to Laguna L.L.C., which is 40% of the amount of attorney's fees Laguna, L.L.C. paid Attorneys. The Court will also reduce the amount of allowed compensation by $6,113.28.

*3. Whether the Fees Were Necessary and Reasonable Under 11 U.S.C. § 330.*

Next, Bank'34 contends that some of the fees were not reasonably likely to benefit the bankruptcy estate. Attorney compensation is governed by 11 U.S.C. § 330, which provides that counsel for the debtor may be awarded "reasonable compensation for actual, necessary services" and "reimbursement for actual, necessary expenses." 11 U.S.C. § 330(a)(1)(A) and (B). The

---

[5] If Laguna, L.L.C. was to pay part of Attorneys' compensation, Attorneys should have also supplemented their disclosure under Fed.R.Bankr.P. 2014(a). *See In Re West Delta Oil Co., Inc.,* 432 F.3d 347, 355 (5th Cir.2005) ("[U]nder Rule 2014(a), …full disclosure is a continuing responsibility"); *In re Keller Financial Services of Floride, Inc.,* 248 B.R. 859, 898 (Bkrtcy.M.D.Fla. 2000) ("[A] professional employed under 11 U.S.C. § 327(a) is under a continuing obligation to supplement its 2014 statement if circumstances change.").

Court, if appropriate, may award compensation less than the amount requested. *See* 11 U.S.C. § 330(a)(2). The party seeking an award of compensation bears the burden of demonstrating that the services provided were actual, necessary, and beneficial to the estate.[6] Compensation cannot be awarded in a Chapter 11 case for services that were neither "reasonably likely to benefit the debtor's estate" nor "necessary to the administration of the case." 11 U.S.C. § 330(a)(4)(A)(ii)(I) and (II).

The Tenth Circuit has determined that in a Chapter 11 case, a court's assessment of fees under 11 U.S.C. § 330 requires a two-step process: 1) the Court must first determine whether the post-petition services are necessary, (i.e, whether the services were reasonably likely to benefit the estate); and 2) if so, the Court must determine whether the services were reasonable. *See In re Lederman Enterprises, Inc.*, 997 F.2d 1321, 1323 (10th Cir. 1993) (stating that "the beneficial nature of legal services must be determined before a reasonableness inquiry may be conducted . . ."). "Benefit" to the estate is measured in part by considering "whether the services were necessary to the administration of, or beneficial at the time which the service was rendered, toward the completion of, a case under this title." 11 U.S.C. § 330(a)(3)(C) (setting forth factors for determining the reasonableness of compensation). Benefit to the estate should be measured as of the time the services are provided, not at the time the Court ultimately reviews the fee application.[7] Fees that benefit only the Debtors as individuals and not in their capacities as

---

[6] *In re Smith*, 317 F.3d 918, 928 (9th Cir.2002) ("the fee applicant must demonstrate that the services for which compensation is sought satisfy the requirements of section 330 ..."), *abrogated on other grounds by Lamie v. United States Trustee*, 540 U.S. 526, 531–39, 124 S.Ct. 1023, 157 L.Ed.2d 1024 (2004)); *In re Berg*, 268 B.R. 250, 257 (Bankr.D.Mont.2001) ("The burden of proof to show entitlement to all fees requested from the estate is on the applicant.") (citation omitted).

[7] *In re Polishuk*, 258 B.R. 238, 248 (Bankr.N.D.Okla.2001) (citing *In re City Mattress, Inc.,* 174 B.R. 23, 26 (Bankr.W.D.N.Y.1994) stating that "[t]he key issue is whether the services were necessary, not whether the debtor's activities were, in hindsight, necessary to achieve whatever outcome eventually occurs."). *See also, In re Berg*, 268 B.R. at 260 (same).

-10-

debtors in possession provide no benefit to the estate in a Chapter 11 case and are not compensable from assets of the estate.[8]

Benefit to the estate for services provided by counsel for a Chapter 11 debtor in possession is not restricted to success measured by confirmation of a plan or the prospect of confirming a plan. *In Re Kitts Development,* LLC, 474 B.R. 712, 720 (Bankr.D.N.M. 2012, J. Jacobvitz). The Court may allow compensation where counsel's services promoted the bankruptcy process and contributed to the administration of the estate even though the case ultimately converted from Chapter 11 to Chapter 7.[9] Moreover, the Court may draw on its own experience with attorney charges in bankruptcy cases in this district to determine a reasonable fee.[10]

*Charges for Conferring with Kurt Young*

Bank'34 asserts that the conversations between Attorneys and the Debtors' son, Kurt Young, are not compensable because they did not further the interests of the bankruptcy estate. The Court disagrees. Attorneys spent a total of 2.8 hours conferring with Kurt. Although Kurt is not a party to the bankruptcy case, he owns several pieces of property with the Debtors and advises them about their financial affairs. Ms. Steiling testified that on several occasions, Kurt

---

[8] *See In re Kloubec*, 251 B.R. 861, 864 (Bankr.N.D.Iowa 2000) ("Attorney fee applications for debtors' attorneys in bankruptcy will be denied to the extent the services rendered were for the benefit of the debtor and did not benefit the bankruptcy estate.") (citation omitted); *In re Greene*, 138 B.R. 403, 408 (Bankr.S.D.N.Y.1992) (stating that "fees awarded to an attorney for the debtor are determined in the light of the benefits those services produced for or in connection with the estate only, because fees are not allowed for services that benefit the debtor but not the estate.") (citations omitted).

[9] *See, e.g., Berg*, 268 B.R. at 262 (allowing compensation for services provided by debtor's counsel to prepare and compile the debtor's statements and schedules, while acknowledging that the court had the discretion to deny all requested fees and costs in a doomed Chapter 11 case that resulted in conversion to Chapter 7); *In re Old South Transp. Co., Inc.*, 134 B.R. 660, 663–666 (Bankr.M.D.Ala.1991) (reducing the amount of allowed compensation to attorneys for debtor in possession in light of limited results obtained; debtor's Chapter 11 reorganization efforts failed yet counsel allowed the debtor to continue in Chapter 11 when there was no longer any likelihood of a successful reorganization).

[10] *See In re Pryor*, 2007 WL 1073884, *1 (Bankr.D.Md. Feb. 8, 2007) (reducing the allowed fees for chapter 13 debtor's counsel in reliance on the court's "own experience"); *In re Burton*, 278 B.R. 645, 649–50 (Bankr.M.D.Ga.2001) ("The court may draw on its own experience with the present case and similar cases to determine a reasonable fee.") (internal citations omitted); *In re Spillane,* 884 F.2d 642, 647 (1st Cir.1989) (same).

-11-

provided advice to the Debtors that either conflicted with or supplemented her advice to Debtors regarding strategy in the bankruptcy case. Kurt's involvement complicated the bankruptcy case. It was reasonable and appropriate for Attorneys to confer with Kurt to facilitate Attorneys' effective representation of the Debtors. The Court finds that the fees Attorneys charged for communicating with Kurt were reasonable and necessary and will not disallow any these charges,

*Charges Relating to the Water Mill Litigation*

Next, Bank'34 contends that Attorneys spent excessive time attempting to remove the Water Mill Litigation from state court to bankruptcy court. The Court agrees that the time reflected in the Fee Application for researching and discussing issues relating to removal appears to be excessive. When a less-experienced attorney researches areas of law in which a more experienced attorney would already be well-versed, and when supervision is required as part of the training process, billing judgment generally requires a reduction in time charged, if appropriate.[11]

Bank'34 objects to 25.7 hours Attorneys spent investigating whether the Water Mill Litigation could be removed to federal court. The legal standards relating to removal are well settled. The Court finds that such charges are excessive and will therefore disallow one-third of the amount charged for such services, or $1,438.00.

---

[11] *See, e.g., In re Associated Grocers of Colorado, Inc*., 137 B.R. 413, 422 (Bankr.D.Colo.1990) (finding it improper to delegate research of sophisticated bankruptcy issues to attorneys inexperienced in bankruptcy law without any corresponding reduction in the time billed); *In re Grayhall Resources, Inc*., 1990 WL 314011, * 11 (Bankr.D.Colo. March 21, 1990) (unreported) (observing that less experienced attorneys "must spend significant hours in research on matters which would be second nature to experienced counsel[ ]" and that it is a failure in billing judgment to seek compensation from the estate for "the time spent in educating the associates.").

*Charges Relating to the Plan and Disclosure Statement*

Bank'34 also asserts that Attorneys failed to adequately investigate whether a Chapter 11 plan would be feasible. Attorneys spent 6.70 hours in connection with drafting a plan and disclosure statement before the Debtors' case converted from Chapter 11 to Chapter 7. Attorneys represented the Debtors in their Chapter 11 bankruptcy case from July 2011 to June 2012, a period of approximately eleven months. During that time, no plan or disclosure statement was filed. However, the billing statements reflect that certain steps were taken toward formulating a plan. Ultimately, none of these efforts were fruitful because Debtors would not agree to dispose of their property under the plan. "Buying time," in and of itself, is not a sufficient benefit to the estate. *See In re Greene*, 138 B.R. 403, 409 (Bankr.S.D.N.Y.1992) (finding that the counsel was not entitled to compensation where continuation of the Chapter 11 case "was simply a delaying action intended to stall [the debtors' largest creditor] from foreclosing on [the debtors'] home"); *In re Crown Oil*, 257 B.R. 531, 543 (Bankr.D.Mont.2000) (debtor's counsel "should not be rewarded for stringing a bad case out for a lengthy period of time.") (internal citations omitted). Nevertheless, the Court finds that the Attorneys' services in connection with drafting a plan and disclosure statement were reasonable and necessary. Attorneys were aware that the Chapter 11 case had been pending for an extended period and that it was necessary to push toward confirmation to avoid dismissal or conversion of the case. Attorneys also understood the potential importance to the Debtors of their obtaining a Chapter 11 discharge. Attorneys spent some time preparing a plan and disclosure statement to maximize the prospect of a successful reorganization provided they could convince their clients to make the sacrifices necessary to reorganize. Ultimately, that effort failed. At the time such services were rendered, however, those efforts were necessary to create a reasonable possibility of achieving

-13-

Case 11-12554-j7    Doc 225    Filed 12/07/12    Entered 12/07/12 17:18:39 Page 13 of 15

success in the Chapter 11 case. The Court will allow the requested compensation for those services.

*Other Charges*

Bank'34 also asserts that Attorneys: (1) failed to adequately investigate whether Debtors' monthly operating reports were accurate; and (2) resisted Bank'34's attempts to obtain information pursuant to Fed.R.Bankr.P. 2004. There is no evidence before the Court that the fees relating to the monthly operating reports or the Rule 2004 exam were excessive. Bank'34 has zealously sought to protect its interests in the bankruptcy case. Attorneys appropriately spent significant time responding to those efforts. The Court will allow the requested compensation for services rendered in connection with the monthly operating reports and the Rule 2004 examination.

## CONCLUSION

Based on the foregoing, Attorneys' Fee Application will be granted, in part, and denied, in part. The Court will enter a separate judgment and order consistent with this Memorandum Opinion.

_____
ROBERT H. JACOBVITZ
United States Bankruptcy Judge

Date entered on docket: December 7, 2012

COPY TO:

William F. Davis
Andrea Steiling
Attorneys for Debtors
6709 Academy NE, Suite A
Albuquerque, NM 87109

James A Roggow
P.O. Drawer 1837
Las Cruces, NM 88004-1837